**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MORETON BINN and MARISOL F, LLC<br><br>Plaintiff(s)<br><br>v.<br><br>BRUCE T. BERNSTEIN, RICHARD K. ABBE, ANDREW D. PERLMAN, SALVATORE GIARDINA, ANDREW R. HEYER, DONALD E. STOUT, JOHN ENGELMAN, and FORM HOLDINGS CORP.<br><br>Defendant(s) | Civil Action No. 17-08594<br><br>FILED UNDER SEAL |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE PLAINTIFFS' FIRST AMENDED COMPLAINT**

Francis J. Earley
John P. Sefick
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
 AND POPEO, P.C.
The Chrysler Center
666 Third Avenue
Tel: (212) 935-3000
fjearley@mintz.com
jpsefick@mintz.com

Adam L. Sisitsky, *pro hac vice*
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
 AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Tel: (617) 542-6000
alsisitsky@mintz.com

*Attorneys for Form Holdings Corp.; Bruce T. Bernstein;*
*Richard K. Abbe; Andrew D. Perlman; Salvatore Giardina;*
*Andrew R. Heyer; Donald E. Stout and John Engelman.*

**Dated:** February 28, 2018

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 3

ARGUMENT ........................................................................................................................... 5

   I.  **PLAINTIFFS RELEASED DEFENDANTS FROM EACH OF THE ALLEGED CAUSES OF ACTION** ..................................................................... 6

  II.  **PLAINTIFFS HAVE FAILED TO PLEAD A CAUSE OF ACTION FOR WHICH RELIEF MAY BE GRANTED** ............................................... 8

     *A.*  *Plaintiffs Have Failed to Plead a Claim for Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 Promulgated Thereunder (Counts I and X)* ................................................................. 8

     *B.*  *Plaintiffs Have Failed to Plead a Claim for Violations of Section 20 of the Exchange Act (Count II; Count X)* ................................................. 21

     *C.*  *Plaintiffs Have Failed to Plead Fraudulent Misrepresentation (Count III)* ................. 22

     *D.*  *Plaintiffs Have Failed to Plead Negligent Misrepresentation (Count V)* ..................... 23

     *E.*  *Plaintiffs Have Failed to Plead Breach of Fiduciary Duty Against Bernstein and Heyer (Count VII)* ..................................................... 24

     *F.*  *Plaintiffs Have Failed to Plead a Claim for Fraudulent Omission Against Bernstein and Heyer (Count IV)* ..................................................... 26

     *G.*  *Plaintiffs Have Failed to Plead a Claim for Expropriation (Count VI)* ....................... 26

     *H.*  *Plaintiffs Have Failed to Plead a Claim for Unjust Enrichment (Count VIII)* ............................................................................................ 28

     *I.*  *Plaintiffs Have Failed to Plead a Claim for Breach of Fiduciary Duty of Candor Against All Defendants (Count IX)* ............................................. 29

     *J.*  *The Claims Against Stout and Engelman Are Especially Frivolous* ............................. 29

CONCLUSION ........................................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*In re 3COM Corp. Shareholders Litig.*,
    1999 Del. Ch. LEXIS 215 (Del. Ch. Oct. 25, 1999) .................................................29

*Abdale v. North Shore-Long Island Jewish Health Sys., Inc.*,
    19 N.Y.S.3d 850, 861-62 (N.Y. Sup. Ct. 2015) ............................................... 29-30

*ACP Master, Ltd. v. Sprint Corp.*,
    2017 Del. Ch. LEXIS 125 (Del. Ch. July 21, 2017) ...........................................27

*Alki Partners, L.P. v. Vatas Holding GmbH*,
    769 F. Supp. 2d 478 (S.D.N.Y. 2011) ............................................................ 13-14

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) .............................................................................................8

*Arco Capital Corp. v. Deutsche Bank AG*,
    986 F. Supp. 2d 296 (S.D.N.Y. 2013) .................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................5

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
    980 F. Supp. 2d 564 (S.D.N.Y. 2013) ...............................................................16

*Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*,
    850 F. Supp. 1199 (S.D.N.Y. 1994) ..................................................................22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................5

*In re BP plc Derivative Litig,.*
    507 F. Supp. 2d 302, 307 (S.D.N.Y. 2007) .......................................................24

*Christopher Watson & Intellectus, LLC v. Riptide Worldwide, Inc.*,
    2013 U.S. Dist. LEXIS 14465 (S.D.N.Y. Feb. 4, 2013) ....................................24

*CorVel Enter. Comp. v. Schaffer*,
    2010 Del. Ch. LEXIS 109 (Del. Ch. May 19, 2010) ...................................... 7-8

*In re EDAP TMS S.A. Sec. Litig.*,
    2015 U.S. Dist. LEXIS 121960 (S.D.N.Y. Sept. 14, 2015) ................................21

*El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*,
    152 A.3d 1248 (Del. 2016) ................................................................................27

*Fezzani v. Bear, Stearns & Co.*,
   384 F. Supp. 2d 618 (S.D.N.Y. 2004)................................................................10

*Fort Worth Emp'rs Ret. Fund v. Biovail Corp.*,
   615 F. Supp. 2d 218 (S.D.N.Y. 2009)...........................................................20, 21

*Frigitemp Corp. v. Fin. Dynamics Fund, Inc.*,
   524 F.2d 275, 283 (2d Cir. 1975)........................................................................26

*Hammerstone NV, Inc. v. Hoffman*,
   2010 U.S. Dist. LEXIS 22182 (S.D.N.Y. Mar. 10, 2010) ....................................15

*Hau Yin To v. HSBC Holdings PLC*,
   2017 U.S. Dist. LEXIS 28931 (S.D.N.Y. Mar. 1, 2017) ......................................24

*In re Initial Pub. Offering Sec. Litig.*,
   399 F. Supp. 2d 261 (S.D.N.Y. 2005)..................................................................20

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991)...................................................................................2

*Kurzweil v. Philip Morris Cos.*,
   1995 U.S. Dist. LEXIS 13030 (S.D.N.Y. Sept. 11, 1995)....................................16

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014).................................................9, 12, 13, 18

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
   26 F. Supp. 3d 278 (S.D.N.Y. 2014)....................................................................17

*Malin v. XL Capital Ltd.*,
   499 F. Supp. 2d 117 (D. Conn. 2007)............................................................12, 19

*Meda AB v. 3M Co.*,
   969 F. Supp. 2d 360, 385 (S.D.N.Y. 2013)..........................................................26

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993).................................................................................14

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)...................................................................................9

*Ortho-Clinical Diagnostics Berm. Co. v. FCM, LLC*,
   2017 U.S. Dist. LEXIS 105418 (S.D.N.Y. July 6, 2017) .....................................26

*PPI Enters. (U.S.) v. Del Monte Foods Co.*,
   2003 U.S. Dist. LEXIS 16006 (S.D.N.Y. Sept. 11, 2003)....................................22

*Pfeffer v. Redstone*,
    965 A.2d 676 (Del. 2009) ........................................................................30

*Seven Invs., LLC v. AD Capital, LLC*,
    32 A.3d 391 (Del. Ch. 2011) ...........................................................2, 6, 7

*Shareholder Representative Servs. LLC v. Sandoz Inc.*,
    2015 N.Y. Misc. LEXIS 740 (N.Y. Sup. Ct. Mar. 16, 2015) ...................6, 7, 22, 23

*In re ShengdaTech, Inc. Sec. Litig.*,
    2014 U.S. Dist. LEXIS 112190 (S.D.N.Y. Aug. 12, 2014) ....................................22

*Stratte-McClure v. Stanley*,
    598 F. App'x 25 (2d Cir. 2015) .................................................................13

*Tiberius Capital, LLC v. Petrosearch Energy Corp.*,
    2011 U.S. Dist. LEXIS 36019 (S.D.N.Y. Mar. 31, 2011) ....................................23

*Titan Grp., Inc. v. Faggen*,
    513 F.2d 234 (2d Cir. 1975) ......................................................................15

*Total Care Physicians, P.A. v. O'Hara*,
    2002 Del. Super. LEXIS 493 (Del. Sup. Ct. Oct. 29, 2002) ..................................28

*In re Tri-Star Pictures*,
    634 A.2d 319 (Del. 1993) ..........................................................................27

*Vichi v. Koninklijke Philips Elecs. N.V.*,
    62 A.3d 26 (Del. Ch. 2012) ...................................................................28-29

*Vladimir v. Bioenvision, Inc.*,
    606 F. Supp. 2d 473 (S.D.N.Y. 2009) ...........................................................10

*Wachovia Equity Sec. Litig. v. Wachovia Corp.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) ...........................................................23

**Statutes and Rules**

Del. Code, tit. 6, § 18-1101 ...........................................................................24-25

15 U.S.C. § 78u-4(b)(1)(2) .................................................................................9

NASDAQ Rule 5605(a)(2)(A)-(G) ...........................................................................9

## PRELIMINARY STATEMENT

Each of Plaintiffs' claims is barred by a ***global release*** (the "Release") that Plaintiffs signed in conjunction with the merger of XpresSpa Holdings, LLC ("XpresSpa") into Form Holdings Corp. ("Form") (the "Merger").   Plaintiffs, [1] sophisticated business parties and former minority owners of XpresSpa, approved the Merger, and in doing so, signed a Joinder Agreement.   In the Joinder Agreement, Plaintiffs released Defendants[2] from all claims, known or unknown, arising on or before the closing of the Merger, December 23, 2016.  Yet, on November 6, 2017, Plaintiffs astoundingly filed a Complaint asserting the very claims that they contracted not to bring (the "Complaint") – claims based on alleged misrepresentations, omissions and events which occurred ***before*** the Merger closed.

Defendants' counsel informed Plaintiffs' counsel by letter, dated December 11, 2017 (the "Rule 11 Letter"[3]), that each of Plaintiffs' claims was legally barred and demanded that Plaintiffs withdraw the Complaint.  Plaintiffs refused.  As such, Defendants filed a motion to dismiss the Complaint on January 17, 2018 (the "Motion").  Plaintiffs never responded to the Motion.  Instead, fully aware that their claims were barred, Plaintiffs filed an amended complaint on February 7, 2018.   Dkt. No. 43 ("Amended Complaint" or "Am. Compl.").   The Amended Complaint, however, fails to address any of the issues that Defendants raised in the Rule 11 Letter and Motion including, most critically, the Release.   Tellingly, neither the Complaint nor the Amended Complaint even mentions the Release.  Moreover, Plaintiffs' only newly asserted cause of action

---

[1] "Plaintiffs" refers to Moreton Binn and Marisol F, LLC.

[2] "Defendants" refers to Form, Bruce Bernstein, Richard Abbe, Andrew Perlman, Salvatore Giardina, Andrew Heyer, Donald Stout, and John Engelman.

[3] A true and correct copy of the Rule 11 Letter is attached to the Declaration of John P. Sefick ("Sefick Decl.") as Exhibit 1.

in the Amended Complaint is also barred by the Release, as well as by XpresSpa's LLC Agreement and controlling Delaware law.  The Amended Complaint should be dismissed with prejudice, with Defendants awarded costs and fees in connection with defending against this legally barred action.

Indeed, Plaintiffs' Amended Complaint perpetuates the fictitious tale of their valuable minority interest in XpresSpa and a secretive subgroup of Form board members (referred to as the "Controlling Group") allegedly out to deprive Plaintiffs of this valuable interest.  No such valuable interest existed and there is not, nor was there ever, any Controlling Group.[4]  For more than a year leading to the Merger, XpresSpa was losing money, was in considerable financial trouble and was unable to get financing or locate a qualified buyer.  At the time of the Merger, Plaintiffs were happy to accept Form shares as consideration for their minority interest in the struggling XpresSpa. There was no other viable option.[5]

Suffering from apparent buyer's remorse because of a decline in Form's share price, Plaintiffs brought suit.  But, their claims are barred.  Delaware law, which governs the relevant contracts, views releases, like the one Plaintiffs signed, as important tools "because they are designed to provide complete peace."  *Seven Invs., LLC v. AD Capital, LLC*, 32 A.3d 391, 397 (Del. Ch. 2011).  Plaintiffs' Amended Complaint, if allowed to proceed, would eviscerate a material term of an arms-length contract negotiated by competent counsel representing sophisticated business parties. Under Delaware law, releases, like the one here, are routinely enforced and bar each of Plaintiffs' claims.  Nevertheless, even if there had been no such release,

---

[4] The only fact that Plaintiffs cite to support the existence of a Controlling Group and its alleged misconduct are overlapping business relationships between four members of Form's Board of Directors. (Am. Compl. ¶ 2.)

[5] All of the facts cited herein are widely contained in the public domain and documents incorporated by reference in Plaintiffs' Amended Complaint and, thus, may be considered for purposes of this motion to dismiss.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (finding documents incorporated by reference in complaint and SEC filings both properly considered on motion to dismiss).

Plaintiffs' causes of action still have no merit and fail as a matter of law.  Accordingly, the Amended Complaint should be dismissed in its entirety with prejudice.[6]

## FACTUAL BACKGROUND

XpresSpa is a leading luxury travel spa business, offering travelers premium spa services. (*See* September 9, 2016 form S-4 ("S-4").)[7]  Form is "a diversified holding company focused on acquiring and developing small to mid-market companies with growth potential." (*See* S-4 at F-81.)  By December 2015, XpresSpa was having financial difficulties and was introduced to Form.  At that time, Form and XpresSpa discussed Form providing financing to XpresSpa. (*Id*. at 44.)

In April 2016, the discussion changed from a financing transaction to Form's potential acquisition of XpresSpa. (*Id*. at 45.)  Thereafter, the parties exchanged draft term sheets and came to an agreement on the Merger's terms, executing a term sheet on July 20, 2016. (*Id*. at 45-48.)  On August 7, 2016, Form and XpresSpa separately held board meetings and, with the exception of Bruce Bernstein, who was a member of both boards of directors and chose to abstain from voting, each board unanimously voted in favor of the Merger. (*Id*. at 49.)[8]

On August 8, 2016, XpresSpa and Form executed the Merger Agreement.[9] (*Id*.)  The Merger Agreement required all XpresSpa shareholders to enter into a Joinder Agreement.

---

[6] Defendants will be moving for their attorneys' fees pursuant to Section 4(d) of the Joinder Agreement and such other relief as this Court deems appropriate.  The Joinder Agreement is attached to the Sefick Decl. as Exhibit 2.

[7] An amended S-4 was issued in October 2016.  Nothing cited here from the "S-4" was changed in the amendment.

[8] Moreton Binn's vote (representing Plaintiffs' interest in XpresSpa) was not required for the Merger to proceed under XpresSpa's operating agreement.  The Merger was unanimously approved.  Under the Fourth Amended and Restated Limited Liability Company Operating Agreement of XpresSpa Holdings, LLC ("LLC Agreement," attached to the Sefick Decl. as Exhibit 3), a sale of XpresSpa is deemed a "Special Significant Matter." (LLC Ag. at 12, § 1.01(h).)  Special Significant Matters only require approval of a *majority* vote of XpresSpa directors. (*Id*. at 23, § 3.03(a).)  Therefore, the Merger would have proceeded regardless of Mr. Binn's vote because all directors (not including Mr. Binn) voted in favor of the merger.

[9] The Merger Agreement is attached to the Sefick Decl. as Exhibit 4.

(*See* Merger Ag., § 5.1(e).)  Furthermore, execution of the Joinder Agreement was a condition to the Merger proceeding forward. (*Id*. § 6.2(m).)   The parties, including Plaintiffs through their counsel, negotiated the terms of the Joinder Agreement.   Plaintiffs even conditioned their execution of the Joinder Agreement on their counsel's negotiation of and sign-off on the Joinder Agreement's terms.  Both Plaintiffs hand-wrote under their signatures that "these signature pages are being sent subject to the Agreements being negotiated on my behalf by Kramer Levin Naftalis & Frankel LLP." (*See* Joinder Ag. at 11, 13.)

Under the express terms of the Joinder Agreement, Plaintiffs agreed that "the agreements and covenants of the other Parties, as well as the Merger Consideration paid by Parent . . . is adequate and acceptable as consideration for the obligations of the Joinder Party hereunder." (Joinder Ag. § 4(a).)  Among the obligations to which Plaintiffs agreed was a broad and global release of all claims relating to or arising from the Merger which stated:

> In further consideration of the transactions contemplated by the Merger Agreement, effective as of the Effective Time, the Joinder Party, on behalf of itself and its predecessor and assigns, hereby irrevocably and unconditionally releases, waives and holds each of the Company, Parent *[Defendant Form]* and Merger Sub, their respective Affiliates, predecessors and assigns, and their ***respective directors*** . . harmless from and against ***any and all claims of any nature in any capacity arising on or prior to the Closing*** . . . but excluding any Joinder Party's rights under the Merger Agreement or any Transaction Document. . . . It is further agreed and understood that this Release is a ***full and final release of all Claims whether known or unknown, fixed or contingent, manifested or unmanifested***.  Joinder Party hereby waives the protection of any provision of any law that would operate to preserve claims that are unknown as of the Closing Date or any other time.

(Joinder Ag. § 4(c) (emphasis added).)

Additionally, Plaintiffs acknowledged that the Release was a material term of the Joinder Agreement and that any breach of the Release—i.e. filing claims against Defendants—could result in irreparable harm such that Defendants were entitled to seek injunctive relief. (*Id*. § 4(d).)

Moreover, Plaintiffs acknowledged that any breach of the Release would require them to pay Defendants' legal fees to enforce the Release. (*Id*. § 4(d).)

On October 28, 2016, Plaintiffs executed the Joinder Agreement.  By this time, XpresSpa was in dire financial condition and, in December 2016, owed its vendors over $1 million for past due invoices and was projected to run out of cash and be unable to make payroll.  (Affidavit of Edward Jankowski ("Jankowski Aff.") ¶ 4.[10])  On December 23, 2016, the Merger closed, saving XpresSpa's business and providing its former owners with a lifeline.

As a result of the Merger, XpresSpa's shareholders (including Plaintiffs) received an aggregate of 2,500,000 of Form common stock, 494,792 shares of Form preferred stock and warrants to purchase an aggregate of 2,500,000 shares of Form common stock. (S-4 at 1.)  In February and April 2017, Plaintiffs received and accepted their common stock, preferred stock and warrants.  (Am. Compl. ¶ 19.).  Less than a year later, Plaintiffs filed this lawsuit.

## ARGUMENT

In order to state a claim and survive a 12(b)(6) motion to dismiss, Plaintiffs must plead allegations demonstrating that it is plausible, not just possible, that Defendants are liable for the alleged causes of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Ultimately, the complaint must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  None of Plaintiffs' claims meets this pleading standard, and accordingly the Amended Complaint must be dismissed.

---

[10] The Jankowski Aff. is attached to the Sefick Decl. as Exhibit 5.

## I.   PLAINTIFFS RELEASED DEFENDANTS FROM EACH OF THE ALLEGED CAUSES OF ACTION

Under the Joinder Agreement, Plaintiffs *expressly and globally released* Form and its "directors, officers, employees, shareholders, equity holders and agents from *any and all* claims *of any nature in any capacity* arising *on or prior to the Closing*. . ." (Joinder Ag. § 4(c) (emphasis added).)  Furthermore, Plaintiffs "agreed and understood" that the Release "is a *full and final* release of all Claims *whether known or unknown, fixed or contingent, manifested or unmanifested*." (*Id*. (emphasis added))  Plaintiffs' causes of action are based on alleged misrepresentations, omissions and events that occurred *before the closing*.  As such, the Release legally bars (and released Defendants from) each cause of action that Plaintiffs allege in the Amended Complaint.  And this type of global release is enforceable (and has been enforced) under Delaware law.[11]

Indeed, Delaware law recognizes that an "effective release terminates the rights of the party executing and delivering the release and . . . is a bar to recovery on the claim released." *Seven Invs., LLC*, 32 A.3d at 396.  Moreover, "where the language of the release is clear and unambiguous, it will not lightly be set aside." *Id*.  This is because releases "are designed to provide [parties] complete peace." *Id*. at 396.  Plaintiffs seek to disturb that peace; they cannot.  In that regard, *Shareholder Representative Services LLC v. Sandoz Inc*.,  which applied Delaware law, is directly on point.  2015 N.Y. Misc. LEXIS 740 (N.Y. Sup. Ct. Mar. 16, 2015).

In *Shareholder Representative Services LLC*, former shareholders of an acquired company brought suit alleging breach of the implied covenant of good faith and fair dealing, common law fraud, state securities violations, negligent misrepresentation, unjust enrichment and breach of contract. *Id*. at *6-7.  Defendants argued that none of the non-contract claims could survive a

---

[11] Pursuant to Section 8 of the Joinder Agreement, Delaware law governs.

motion to dismiss because plaintiffs globally released defendants from all claims relating to or

arising from the merger. *Id*. at *9.[12]  Because such a release "is intended to cover everything—

what the parties presently have in mind, as well as what they do not have in mind," the court held

that on its face, "this broad release encompasse[d]" each of the fraud, negligent misrepresentation,

breach of covenant of good faith and fair dealing, unjust enrichment, and state securities claims.

*Id*. at *10-12.  The same result is warranted here.

Here, the Release is broader than the release upheld in *Shareholder Representative*

*Services, LLC*.  The Release makes clear that it covered every potential claim with respect to the

Merger, other than breach of the Merger Agreement itself. (*See* Joinder Ag. § 4(c) (". . .this Release

is a full and final release of all Claims ***whether known or unknown, fixed or contingent,***

***manifested or unmanifested***.") (emphasis added).)  This includes release of any fraud claim.  For

example, *Seven Invs., LLC*, dismissed plaintiffs' fraud claim because it constituted a claim, "***albeit***

***an 'unknown' and arguably 'contingent' claim, that fell within the scope of the General***

***Release***." *Id*. at 398 (emphasis added).  Likewise, here, Plaintiffs agreed to release all claims

"unknown," "contingent," and "unmanifested," which includes each claim that Plaintiffs allege.

Moreover, where the language of a release is clear, Delaware law requires the Court to

interpret the language as it is written.  In *CorVel Enterprise Comp. v. Schaffer*, the plaintiff urged

the court to limit the scope of a general release so that plaintiff could enforce a non-compete

agreement.  2010 Del. Ch. LEXIS 109 (Del. Ch. May 19, 2010).  The court would not do so:

> [C]ourts must read the words for what they say.  This is a release in which CorVel
> specifically acknowledges the attorney who advised it.  CorVel is, by all accounts,
> a sophisticated party.  This is the agreement that it made.  The agreement is clearly

---

[12] Specifically, the release stated that the former shareholders agreed to:  "forever release[], acquit[], and discharge[]
the Parent [Sandoz Inc.] and each of [its] respective current and former directors, affiliates, predecessors, and assigns
from any and all rights, actions, claims that arise out of or are related directly or indirectly to the undersigned
ownership of the Securities, in law or in equity, known and unknown except for the undersigned's right to receive the
applicable Merger Consideration." *Id*. at *10.

expressed.  The Court's function is a limited one.  It is to give meaning and substance to the words that the parties have freely chosen.

*Id*. at *11.  Like *CorVel*, the Court here should not narrow the scope of the Release to allow any of Plaintiffs' claims to proceed.  The Release language is clear and broad, and Plaintiffs, both sophisticated parties, had their counsel review and negotiate the Joinder Agreement.  In fact, upon signing the Joinder Agreement, both Plaintiffs hand-wrote: "[t]he signature pages are being sent subject to the agreements being negotiated on my behalf by Kramer Levin Naftalis & Frankel LLP." (*See* Joinder Ag. at 10, 12.)  Thereafter, Plaintiffs received and accepted their Form shares and warrants.  Accordingly, Plaintiffs' entire Amended Complaint violates the Release.  The claims should be dismissed in their entirety, with prejudice, and Defendants should be awarded their costs and attorneys' fees pursuant to section 4(d) of the Joinder Agreement.

## II.   PLAINTIFFS HAVE FAILED TO PLEAD A CAUSE OF ACTION FOR WHICH RELIEF MAY BE GRANTED

### A.  Plaintiffs Have Failed to Plead a Claim for Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 Promulgated Thereunder (Counts I and X)[13]

To state a securities fraud claim under Section 10(b) and Rule 10b-5, Plaintiffs must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460-61 (2013).[14]  Moreover, a complaint alleging

---

[13] Plaintiffs allege a separate cause of action (Count X) for aiding and abetting securities violations.  This claim fails for the same reasons as articulated in Sections II.A and II.B because the underlying counts themselves fail.

[14] Plaintiffs' Amended Complaint is difficult to discern, but to the extent that they are alleging claims under 10b-5(a) and (c), those claims fail.  Indeed, in order to allege a claim under 10b-5(a) and (c), Plaintiffs must "specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue." *Arco Capital Corp. v. Deutsche Bank AG*, 986 F. Supp. 2d 296, 304-05 (S.D.N.Y. 2013).  Plaintiffs' only allegations of an alleged deceptive or manipulative act are the general and conclusory claims concerning an alleged *quid pro quo* arrangement.  As demonstrated in Section

securities fraud must satisfy the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").[15]

       1.   <u>Plaintiffs have failed to allege any material misrepresentations or omissions</u>

Under a generous reading of the Amended Complaint, Plaintiffs allege six misstatements or omissions. None is actionable as demonstrated below.

***Alleged Misstatement / Omission 1: Bruce T. Bernstein "will be deemed 'independent' in accordance with the standards set by The NASDAQ Capital Market. . ."*** (Am. Compl. ¶ 59.)

Plaintiffs allege that the above statement constitutes a material omission and misstatement under the securities laws. It constitutes neither. First, the statement is not false. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) (holding that an alleged misstatement must be false at the time it was made and without that, "there can be no fraud"). In its September 9, 2016 S-4, Form disclosed that Bernstein would be deemed independent. (S-4 at 138.) Rule 5605(a)(2) of the NASDAQ Rules defines an "Independent Director" as "a person other than an Executive Officer or employee of the Company or any other individual having a relationship which, ***in the opinion of the Company's board of directors***, would interfere with the exercise of independent judgment in carrying out the responsibilities of a director." (emphasis added). Additionally, the rule provides a specific list of individuals who cannot qualify as independent. (Rule 5605(a)(2)(A)-(G).) Mr. Bernstein does not fit under 5605(a)(2)(A)-(G), and

---

II.A.2, Plaintiffs fail to assert a single factual allegation to support a finding that a *quid pro quo* arrangement existed. Accordingly, Plaintiffs fail to satisfy the pleading requirements to assert such a claim.

[15] Rule 9(b) requires that complaints "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000). And, likewise, the PSLRA requires the complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Finally, the PSLRA also establishes a high bar for pleading scienter: a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A).

thus his independence, under NASDAQ Rules, is to be determined *at the board's discretion*.  And this is what Form's disclosure states: that the board determined that Mr. Bernstein is capable of exercising independent judgment as a board member.  Plaintiffs' disagreement with the board's conclusion does not transform this into a false statement that is actionable.

Second, Form did not make the alleged misstatement regarding Mr. Bernstein's independence until *after* Mr. Binn, on behalf of Plaintiffs, voted in favor of the Merger Agreement on August 7, 2016.  In order for an alleged misstatement to be actionable, there must be a connection between the statement and the purchase or sale of a security, and Plaintiffs must have relied on that misstatement. *See Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 639 (S.D.N.Y. 2004) ("Where the only manipulative or deceptive acts identified in a complaint occur after a challenged securities purchase or sale, a court must dismiss the complaint as failing to state a cause of action for federal securities fraud.") (citations omitted).  *There is no such connection between the alleged statements and transaction – reliance cannot be established*.

Third, to the extent Plaintiffs argue that Defendants withheld this information from Plaintiffs, it does not constitute a material omission.  Indeed, "[t]he duty of a corporation and its officers to disclose is limited.  To that end, a corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact." *Vladimir v. Bioenvision, Inc.*, 606 F. Supp. 2d 473, 484-85 (S.D.N.Y. 2009).  "There are three circumstances in which a duty to disclose arises: (1) when the SEC's rules require disclosure; (2) when an insider trades on the basis of non-public information, otherwise known as the disclose or abstain rule; and (3) when disclosure is necessary to make prior statements not misleading, whether those statements were true or false at the time they were made." *Id*.  Form had no duty to disclose this fact before the

10

S-4 when it ***properly disclosed*** Bernstein as an independent director.  Moreover, Plaintiffs allege

no facts to suggest that this disclosure was necessary "to make prior statements not misleading."

Fourth, even if disclosure was required ***there was no material omission***.  According to

their Amended Complaint, Plaintiffs knew the following prior to voting for the Merger: (i) the

outstanding amount of the Rockmore Note; (ii) the interest rate of the Rockmore Note; (iii) that

the Rockmore Note would remain an obligation of XpresSpa but be guaranteed by Form; (iv) that

Mr. Bernstein allegedly controlled Rockmore and (v) that Mr. Bernstein was a member of Form's

board. (Am. Compl. ¶¶ 66, 74, 78, 81.)  Additionally, Form disclosed that Bernstein would be

deemed independent in its S-4, nearly ***two months before*** Plaintiffs signed the Joinder Agreement,

over ***three months before*** the Merger closed and ***over seven months*** before Plaintiffs received and

accepted the last of their consideration from the Merger in April 2017 (Am. Compl. ¶ 19.).

Plaintiffs assert that had they known the truth about Bernstein's independence, they would

not have "purchased or otherwise acquired Form Holdings stock." (Am. Compl. ¶ 115.)  But as

the above timeline demonstrates, Plaintiffs knew every alleged material fact concerning Bernstein

and the Rockmore Note before voting for the Merger.  And if Bernstein's presence on Form's

board (and his independence) was material to Plaintiffs, then they would have raised this issue

***before*** voting in favor of the Merger on August 7, 2016, ***before*** executing the Joinder Agreement

on October 28, 2016, ***before*** the Merger closed on December 23, 2016 (Am. Compl. ¶¶ 61, 152;

Joinder Ag. at 1) and ***before*** accepting their shares and warrants in 2017.  Plaintiffs cannot now

claim that this information was or would have been material when it was available to them at all

relevant times.[16]

---

[16] In their Amended Complaint, Plaintiffs also allege that Mr. Abbe does not qualify as an independent director because of his interest in a company that has an interest in the Rockmore Note.  (Am. Compl. ¶ 57.)  This allegation fails for the same reasons as stated herein.  *See supra* at 10-11.

**Alleged Misstatement 2:  "We believe the terms of the [Rockmore Note] were reflective of market rates as of the time of issuance."** (Am. Compl. ¶ 64.)

Plaintiffs allege that this statement is false and was not disclosed to them when they voted in favor of the Merger Agreement. (Am. Compl. ¶¶ 65-66, 97.)  Whether styled as a misstatement or omission, it is not actionable.  First, XpresSpa, under Plaintiffs' tenure, entered into the Rockmore Note on April 22, 2015, in apparent agreement that it reflected market rates as of the time of issuance.  (*See* LLC Agreement §1.01.)  Second, Form did not make this statement until *after* Plaintiffs voted for the Merger.  Accordingly, as demonstrated above, Plaintiffs cannot plead reliance. *See supra* at 10-11.

Third, this is a non-actionable statement of belief.  It is settled law in this Circuit that where a plaintiff "asserts the falsity of a statement of belief or opinion, the plaintiff must plead that it was both objectively false and disbelieved by the defendant at the time it was expressed." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d at 571.  Plaintiffs plead neither.  Plaintiffs do not allege the objective falsity of the statement of belief, alleging only that XpresSpa's failure to pay down the principal somehow proved that the loan was not reflective of market value. (Am. Compl. ¶ 65.)  This conclusory allegation cannot support a finding of objective falsity as required by law.  Moreover, "[o]pinion statements are actionable . . . if Plaintiffs can plead with particularity that defendants did not sincerely believe the opinion they purported to hold." *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 144 (D. Conn. 2007).  Plaintiffs fail to offer any such conclusory allegations, let alone any substantively supported ones.

Fourth, to the extent that Plaintiffs allege Defendants materially omitted this information, Plaintiffs are wrong.  As established above, only under limited circumstances, not present here, are Defendants under any affirmative disclosure obligation. *See supra* at 10.

Finally, the statement is not material under the law.  Plaintiffs knew the following facts: (i) the Rockmore Note existed; (ii) the Rockmore Note's interest rate; and (iii) in years of making payments on the Rockmore Note, XpresSpa had yet to reduce the principal. (Am. Compl. ¶¶ 41, 64, 65.)  Form's opinion that the Rockmore Note was in line with the market does not alter the *facts* available to Plaintiffs that informed their opinion that the Rockmore Note was "onerous" and not in line with market ***at the time they were deciding whether to vote in favor of the Merger Agreement***.[17]  *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d at 572 ("Material facts are those that may affect the desire of investors to buy, sell, or hold securities.").  Nowhere in their Amended Complaint do Plaintiffs plead how Form's statement concerning the Rockmore Note had any impact on their decision to approve the Merger.

**Alleged Misstatement / Omission 3:  "*In his capacity as a member of the Board of Directors of XpresSpa, Bernstein told Mr. Binn that the Rockmore Note would be paid in full shortly after the closing of the merger.*"** (Am. Compl. ¶ 5.)

As an initial matter, this allegation is deficient because it does not identify where and when Mr. Bernstein made this alleged statement to Mr. Binn.  Indeed, "[a] securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Stratte-McClure v. Stanley*, 598 F. App'x 25, 27 (2d Cir. 2015).  Because Plaintiffs fail to meet this heightened pleading standard, this alleged misstatement should be rejected out of hand.

Moreover, this is an alleged statement of future intent, and it is not actionable under the securities laws.  Indeed, courts in this Circuit have found statements like this only to be actionable where the promise of future action is "part of the consideration for the transfer of securities."  *Alki*

---

[17] These allegations are disingenuous, at best, as Plaintiff Binn was a director of XpresSpa when entering into the Rockmore Note.  (*See* LLC Agreement § 3.02(a)(i).)

*Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 495 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (holding that a specific promise to perform an act is only actionable under 10(b) "provided that the promise is given as consideration for the transfer of securities"). Plaintiffs do not, and cannot, allege that Form made any promise to the XpresSpa shareholders that part of the consideration for the Merger was a promise to pay off the Rockmore Note. In fact, the S-4 belies such a contention, specifically disclosing that the Rockmore Note would not be paid off such that it could affect Form's business: "***the Rockmore Note*** and XpresSpa's outstanding debt ***could constrain Form's business and financial condition***." (*See* S-4 at 32 (emphasis added).) Plaintiffs point to no promise in the Merger Agreement and no promise in the S-4 or Proxy that indicated Form's plan to pay off the Rockmore Note shortly after the Merger closed. That a fellow XpresSpa board member had the opinion that this would happen does not make this alleged promise "consideration for a sale of securities" and most certainly not an actionable misstatement under 10(b).[18]

***Alleged Misstatement / Omission 4: "Bernstein and Heyer, in their roles as board members of XpresSpa, made material false statements about the necessity of the merger and availability of other options for the company in their effort to force the merger with [Form Holdings]."*** (Am. Compl. ¶ 72.)

Although Plaintiffs allege that Heyer and Bernstein made misstatements concerning XpresSpa's need to do a deal with Form, they do not identify these misstatements in their Amended Complaint.[19] Indeed, Plaintiffs fail to allege a single statement that either Heyer or Bernstein made

---

[18] It should also be noted that: (i) Bernstein was not authorized to bind Form to any promise outside of the four corners of the Merger Agreement (and Binn knew this); and (ii) Plaintiffs have failed to plead specific facts that would show that Bernstein did not believe this alleged statement to be true at the time that he allegedly made it, which is also required to plead a section 10(b) claim.

[19] This was an issue Defendants flagged for Plaintiffs in the Motion and Plaintiffs have done nothing to address it.

concerning the Merger transaction, other than asserting the same conclusory-styled allegations with which their Amended Complaint is replete. (*See, e.g.* Am. Compl. ¶¶ 51, 76.) Moreover, they fail to satisfy the who, what, when, where, and how pleading requirements of Rule 9(b) and the PSLRA. (*See supra* at 14.) Having failed to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading" alleged misstatement 4 must fail. *Hammerstone NV, Inc. v. Hoffman*, 2010 U.S. Dist. LEXIS 22182, *14 (S.D.N.Y. Mar. 10, 2010).

***Alleged Misstatement / Omission 5:*** ***"[T]he existence of such a close and coordinated arrangement between the members of the Controlling Group is a material fact required to be disclosed under the securities and other laws."*** (Am. Compl. ¶ 36.)

This alleged omission fails because (i) Plaintiffs have not alleged any facts that support the existence of a purported Controlling Group or arrangement other than that certain Form board members have business relationships outside of Form (*see* Section II.A.2 below), (ii) Defendants did not have a duty to disclose their business relationships to Plaintiffs and (iii) the information allegedly withheld was publicly available. As discussed above, Plaintiffs must allege that Defendants owed a duty to disclose the allegedly omitted information. Here, Defendants were under no duty to disclose that certain Form board members were on other boards of directors together. *See Titan Grp., Inc. v. Faggen*, 513 F.2d 234, 236 n.1 (2d Cir. 1975) (holding that it was a "completely frivolous" argument that defendants owed a duty to disclose the extent of their business connections when allegedly "there was a hidden conflict of interest in that relationship"). Furthermore, there is no allegation that this disclosure was necessary to make an affirmative statement by Form not misleading. *See supra* at 10-11.

All of the information that Plaintiffs seek to know was publicly available. Courts in this Circuit consistently hold that an alleged material omission cannot be based on information that

was publicly available. *See Kurzweil v. Philip Morris Cos.*, 1995 U.S. Dist. LEXIS 13030 (S.D.N.Y. Sept. 11, 1995). Indeed, "[w]here allegedly undisclosed material information is in fact readily accessible in the public domain, . . . a defendant may not be held liable for failing to disclose this information." *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 576 (S.D.N.Y. 2013). The S.D.N.Y. rejected the allegations of omissions in *In re Bank of America AIG Disclosure* because "the substance of the alleged omissions was already in the public domain," and thus "the alleged omissions could not have altered the total mix of information available to the public and were also immaterial as a matter of law." *Id.* at 577.

Here, Plaintiffs allege that Defendants did not disclose that Abbe and Giardina were both board members of National Holdings Corporation ("NHC"). (Am. Compl. ¶¶ 32, 36.) Additionally, Plaintiffs allege that Defendants failed to disclose that Perlman and Bernstein were each board members of Neurotrope Inc. ("Neurotrope"). (Am. Compl. ¶¶ 33, 34, 36.) Plaintiffs allege that these constituted material omissions. They do not. Indeed, a mere review of NHC's and Neurotrope's public filings belies any allegation that this information was hidden.

In its 2014 - 2016 10K disclosures, NHC listed its board members, which included Mr. Abbe and Mr. Giardina. (*See* NHC's 2014 10-K at 33-34; 2015 10-K at 36-37; 2016 10-K at 5, 27.) Had Plaintiffs checked, they would have seen that Abbe and Giardina served on NHC's board together. And with respect to Neurotrope, Bernstein and Perlman did not begin serving on its board of directors until ***after*** Plaintiffs agreed to enter into the Merger Agreement. Moreover, Neurotrope did not appoint Perlman to the board until ***after*** the Merger closed. Even so, these two events were publicly available, included in Neurotrope's 2016 Prospectus and 2016 10-K. (*See*

16

Neurotrope's 2016 10-K at 49-53.)  Accordingly, these alleged omissions too cannot form the basis

of a section 10(b) claim.[20]

**_Alleged Misstatement / Omission 6: "To establish the market value of the consideration, the_**
**_Controlling Group delivered to the legacy shareholders an appraisal prepared at the request of_**
**_the Controlling Group and purporting to show that the proposed consideration was valued at_**
**_$35,260,098."_** (Am. Compl. ¶ 6.)

As stated above, in order to allege an actionable misstatement, Plaintiffs must allege that

the misstatement was material and false.  Indeed, Plaintiffs must actually allege "the reason or

reasons why the statement is misleading.  To show actionable falsity, plaintiffs must do more than

say that the statements . . . were false and misleading; they must demonstrate with specificity why

and how that is so."  _In re Magnum Hunter Res. Corp. Sec. Litig._, 26 F. Supp. 3d 278, 290

(S.D.N.Y. 2014).  Plaintiffs utterly fail to make any factual allegations that demonstrate the falsity

of the alleged valuation.  And the allegations that Plaintiffs do make are nonsensical.  Plaintiffs

allege that the valuation was "false because the Controlling Group concealed from Plaintiffs the

long-standing and close relationships between Bernstein, Abbe, Perlman, and Giardina or the

arrangements made between for purposes of effectuating the merger."  (Am. Compl. ¶ 7.)

Plaintiffs fail, however, to assert any factual allegations to support a finding that Abbe's and

Giardina's presence on NHC's board, Bernstein's and Perlman's presence on Neurotrope's board

or any alleged "arrangement" to effectuate the merger impacted the value of the Form shares /

warrants offered to Plaintiffs.  Plaintiffs conclusory allegation that the valuation would have been

lower "had the truth been disclosed" does not satisfy the pleading requirements of 9(b) or the

---

[20] Plaintiffs also appear to suggest two other conclusory misstatements or omissions:  (1) Defendants should have disclosed to Plaintiffs their alleged secret _quid pro quo_ agreement.  Plaintiffs are wrong.  As further demonstrated in Section II.A.2, Plaintiffs fail to plead any facts that support this conclusory and defamatory allegation. (2) Defendants allegedly misrepresented that purchasers of a July 2017 offering were subject to a lock-up, which allegedly proved not to be true. (_See_ Am. Compl. ¶¶ 83-86.)  In addition to this allegation being false, Plaintiffs fail to allege that they purchased securities in connection with the offering and/or that they relied on the alleged misrepresentation. Moreover, Plaintiffs fail to allege that Form's stock went down or that they suffered any loss.

PSLRA.  (Am. Compl. ¶ 9.)  Moreover, given that Form is a publicly traded company, Plaintiffs were free to perform their own analysis concerning the value of the deal consideration.  Plaintiffs chose not to do so which belies Plaintiffs' current allegation that this information was a material consideration for Plaintiffs.

2.   Plaintiffs fail to allege scienter

> Scienter is the mental state embracing an intent to deceive, manipulate, or defraud by the maker of a statement.  When deciding a motion pursuant to Rule 12(b)(6), a court must decide whether all facts taken together—that is, collectively—give rise to a strong inference that a maker of a statement acted with scienter.  The question is not, therefore, whether any individualized statement scrutinized in isolation meets the standard.  A plaintiff adequately alleges scienter only if a reasonable person would deem the inference of scienter <u>cogent and at least as compelling as any opposing inference one could draw from the facts alleged</u>.

*In re Lululemon Sec. Litig.*, 14 F. Supp. 3d at 573 (emphasis in original).  A plaintiff can allege facts that give rise to a strong inference of scienter by (i) pleading motive and opportunity or (ii) pleading facts that demonstrate strong circumstantial evidence of conscious misbehavior or recklessness. *Id.*  Plaintiffs do neither.

The only allegation of motive and opportunity is that Defendants "who were on the [Form] board prior to the merger were motivated to move forward with the merger because [Form] did not have a business likely to generate significant cash revenue after the settlement with ZTE in December 2015." (Am. Compl. ¶ 93.)  In other words, Defendants allegedly entered into the Merger to improve Form's business opportunity.  This allegation cannot support a finding of scienter. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d at 573 (holding that "[a]llegations limited to the type of 'corporate profit' motive possessed by most corporate directors and officers do not suffice").

Plaintiffs additionally suggest that the alleged *quid pro quo* arrangement supports a finding of scienter.  (Am. Compl. ¶ 96.)  But Plaintiffs do not allege facts that support a finding that a *quid*

*pro quo* relationship existed, rather, in a conclusory manner, they simply state that it is so. This is insufficient. Plaintiffs allege that in exchange for his cooperation, "the Controlling Group agreed to grant to Perlman the maximum amount of equity compensation allowable under [Form's] executive compensation plan." (Am. Compl. ¶ 44.) In other words, Perlman was paid ***what he was allowed to be paid under Form's governing documents***. Moreover, Plaintiffs allege that the "Controlling Group unduly influenced Andrew Heyer. . . by presenting to him an undisclosed promise of additional stock options upon close of a merger transaction. This promise of a stock grant was a *quid pro quo* for Heyer's assistance in bringing the deal to fruition. . ." (Am. Compl. ¶ 60.) Plaintiffs fail to include that this "stock grant" was compensation for his agreement to join Form's board, in line with other board member compensation. (S-4 at 90-91.) Quite simply, Plaintiffs do not allege any facts suggesting that a *quid pro quo* arrangement existed. Instead, they allege that because Perlman voted in favor of the Merger and also received allowable executive compensation, there must have been a *quid pro quo* arrangement. Moreover, Plaintiffs allege that because Heyer voted in favor of the Merger and allegedly received additional stock options (for joining Form's board), there must have been a *quid pro quo* arrangement. Such pleading does not satisfy the requisite pleading standards under the securities laws. Indeed, "[t]he Second Circuit has made clear that conclusory allegations are insufficient to establish scienter under PSLRA § 78u-4(b)(2), holding that a pleading technique [that] couple[s] a factual statement with a conclusory allegation of fraudulent intent is insufficient to support the inference that the defendants acted recklessly or with fraudulent intent." *Malin*, 499 F. Supp. 2d at 150. Plaintiffs employ this pleading technique throughout their Amended Complaint, and it should be rejected.[21]

---

[21] Plaintiffs add two additional allegations of motive with respect to Bernstein and Abbe only, neither of which suffices to support a finding of scienter against them. The Amended Complaint asserts conclusory allegations that Bernstein was motivated because it gave him an opportunity to "use the Rockmore Note . . . to gain significant influence at a public company and to extract unwarranted monetary compensation and stock options." (Am. Compl. ¶ 94.) This

3.  <u>Plaintiffs fail to plead loss causation</u>

To plead loss causation, Plaintiffs must allege "that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e. that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 261, 266 (S.D.N.Y. 2005).  The alleged misrepresentation or omission must be "the proximate causal link between the alleged misconduct and the plaintiffs' economic harm." *Fort Worth Emp'rs Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 229 (S.D.N.Y. 2009).  Moreover, Plaintiffs "must allege that, at some point, the concealed scheme was disclosed to the market." *In re Initial Pub. Offering,* 399 F. Supp. 2d at 266.  Plaintiffs fall woefully short of meeting this high pleading standard.

In their initial Complaint, Plaintiffs alleged that they suffered loss because XpresSpa was undervalued (Compl. ¶ 88.)  They have now reversed course and alleged that they suffered a loss because Form's stock was overvalued.  Plaintiffs' inability to settle on a theory is because, quite simply, there is no loss causation.  Like they do in their initial Complaint, Plaintiffs fail to allege how any of the alleged misstatements impacted Form's value.  In fact, the alleged misstatements had no impact on Form's value and have nothing to do with Form's value.  Plaintiffs identify the following alleged misstatements or omissions: that Form misrepresented Bernstein and Abbe as independent directors; that Form misrepresented that the Rockmore Note was in line with the market at the time that it was executed; that Form would pay off the Rockmore Note shortly after

---

allegation is contradicted, however, by the fact that Bernstein ***abstained from voting for or against the Merger as a member of Form's and XpresSpa's board.***  Moreover, there are no facts alleged to support the conclusory statement that Bernstein was trying to "extract monetary compensation and stock options."  Indeed, the Amended Complaint fails to specifically allege what "monetary compensation" he received as part of the Merger that Plaintiffs did not also receive.  Likewise, with respect to Abbe, there are ***no*** factual allegations to support Plaintiffs conclusory allegation that Abbe wanted the Merger to go through so that he could "receive unwarranted monetary compensation and stock options."  (Am. Compl. ¶ 95.)  In fact, as a non-XpresSpa shareholder, Abbe did not receive any additional monetary compensation or stock options, and the Amended Complaint does not allege otherwise.

the Merger; and that Defendants did not disclose that certain defendants served together on other boards.  There is no connection between these alleged misstatements / omissions and Form's value.[22]

Additionally, Plaintiffs fail to allege when and how any of the alleged misstatements impacted the market.  Instead, similar to their other allegations, Plaintiffs allege the conclusory fact that Form's "stock price began to drop steadily," failing to tie this alleged drop in stock price to any of the alleged misstatements or disclosure of them to the market.  (Am. Compl. ¶ 102.)  Such pleading does not establish that the alleged misstatements were the "proximate causal link between the alleged misconduct and the plaintiffs' economic harm."[23]  *Fort Worth Emp'rs Ret. Fund*, 615 F. Supp. 2d at 229.

> B. *Plaintiffs Have Failed to Plead a Claim for Violations of Section 20 of the Exchange Act (Count II; Count X)* [24]

To state a claim for "control person liability under [section] 20(a) of the Securities Exchange Act, a plaintiff must show (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation." *In re EDAP TMS S.A. Sec. Litig.*, 2015 U.S. Dist. LEXIS 121960, at *36 (S.D.N.Y. Sept. 14, 2015).  Because there is no primary violation, the section 20(a) claim must be dismissed.  But it also fails because Plaintiffs have failed to plead culpable participation.

---

[22] Though Plaintiffs make the conclusory allegation that Heyer and Bernstein made material misstatements concerning XpresSpa's need for the Merger (Am. Compl. ¶ 72), Plaintiffs do not allege in their Amended Complaint a single, specific misstatement that either Bernstein or Heyer made, or how these alleged misstatements overvalued Form.

[23] In fact, Binn's vote was irrelevant because the LLC Agreement required only a majority vote and the vote here was unanimous. (S-4 at 49; *supra* at note 6.)  Accordingly, Binn would have been in the same position even if he voted no, further demonstrating that none of the alleged misstatements was tied to any alleged loss.

[24] *See* Footnote 11 above.

21

Courts in this Circuit routinely reject allegations of culpable participation where the complaint fails to plead recklessness with the requisite particularity required under the PSLRA. *See In re ShengdaTech, Inc. Sec. Litig.*, 2014 U.S. Dist. LEXIS 112190, at *31 (S.D.N.Y. Aug. 12, 2014) (holding that complaint failed to allege culpable participation where complaint did not plead recklessness with respect to the underlying acts with the requisite particularity). Because Plaintiffs' claims against the individual defendants fall well-short of the PSLRA standard for pleading scienter, Plaintiffs have failed to plead culpable participation.

### C. Plaintiffs Have Failed to Plead Fraudulent Misrepresentation (Count III)

In order to plead fraud under New York law,[25] a plaintiff must allege "a material misrepresentation of fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Shareholder Representative Servs. LLC*, 2015 N.Y. Misc. LEXIS 740 at *14. Moreover, "[a] claim rooted in fraud must be pleaded with the requisite particularity under CPLR 3016(b)." *Id.* Put differently, "[f]irst, he must show actual reliance—that he actually relied on the information being disclosed—and, in addition, he has to show reasonable or justifiable reliance—that a reasonable participant would have considered the withheld information important in making a decision." *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 850 F. Supp. 1199, 1222 (S.D.N.Y. 1994).

For the same reasons as above, Plaintiffs fail to plead any of the elements of fraud. None of the alleged misstatements is material. *See supra* at 8-17. Moreover, each occurred ***after***

---

[25] New York applies an 'interest analysis' in choice of law of tort claims, under which the courts apply the law of the jurisdiction having the greatest interest in the litigation. "[F]raud claims are governed by the laws of the jurisdiction where the injury is deemed to have occurred – which usually is where the plaintiff is located." *PPI Enters. (U.S.) v. Del Monte Foods Co.*, 2003 U.S. Dist. LEXIS 16006, at *58 (S.D.N.Y. Sept. 11, 2003). New York law applies to the fraudulent misrepresentation claim. New York's interest is clear and any alleged injury to Plaintiffs would have occurred within New York. Plaintiff Marisol F, LLC is organized under New York law and maintains a principal place of business in New York. Plaintiff Moreton Binn resides within the Second Circuit. Defendant Form also has its principal offices in New York. *See PPI Enters. (U.S.)*, 2003 U.S. Dist. LEXIS 16006, at *60-61 (finding plaintiff's principal place of business in New York persuasive in applying New York law under the interest analysis).

Plaintiffs voted in favor of the Merger, so there was no reliance. *See supra* at 10-11. And the Complaint is devoid of any allegation that suggests that Defendants were aware that their alleged misstatements were false. Finally, to the extent that Plaintiffs rely on any of the alleged omissions, they must plead that Defendants' relationship to Plaintiffs was akin to a fiduciary relationship. It was not. Like the Court held under similar circumstances in *Shareholder Representative Services, LLC*, the relationship between Defendants and Plaintiffs was that of an arm's length business relationship from which no fiduciary duty can arise.[26]   2015 N.Y. Misc. LEXIS 740 at *17. Further, Plaintiffs fail to plead scienter. *See supra* at 18-19; *Wachovia Equity Sec. Litig. v. Wachovia Corp.*, 753 F. Supp. 2d 326, 380 (S.D.N.Y. 2011) (where "[p]laintiffs fail to plead scienter" they "therefore fail to plead common law fraud" because "[t]he scienter element for common law fraud is essentially the same as that under federal securities laws").

### D.  Plaintiffs Have Failed to Plead Negligent Misrepresentation (Count V)

A claim for negligent misrepresentation "requires the plaintiff to demonstrate: (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Shareholder Representative Servs. LLC*, 2015 N.Y. Misc. LEXIS 740 at *22. "Under New York law, a negligent misrepresentation claim involves most of the same elements as fraud, with a negligence standard substituted for the scienter requirement." *Tiberius Capital, LLC v. Petrosearch Energy Corp.*, 2011 U.S. Dist. LEXIS 36019, at *33 (S.D.N.Y. Mar. 31, 2011). Thus, "where the same conduct underlies all of the [deficient] fraud claims, the negligent misrepresentation claim is also deficient. . ." *Id*.   Here, Plaintiff bases its negligent misrepresentation claim on the same allegations as its securities and fraud claims. Accordingly,

---

[26] With regard to Bernstein and Heyer, the LLC Agreement eliminated all duties, including fiduciary duties, that Heyer, Bernstein *and Plaintiffs* owed to XpresSpa and each other. (*See* Section II.E below.)

the negligent misrepresentation claim must be dismissed for failure to plead incorrect information, reliance, causation, or damages.

Nevertheless, this claim also fails because Plaintiffs do not allege that they had a special relationship with Defendants as required under the law.  Courts in this Circuit require a plaintiff to plead "something beyond an ordinary arm's length transaction." *Christopher Watson & Intellectus, LLC v. Riptide Worldwide, Inc.*, 2013 U.S. Dist. LEXIS 14465, at *11 (S.D.N.Y. Feb. 4, 2013). Plaintiffs conclusory allegations fail to support a finding that the Merger was anything "more than an arm's length business arrangement between sophisticated and experienced parties, a circumstance insufficient to create a 'special relationship.'" *Id.* at *14.

### E.  Plaintiffs Have Failed to Plead Breach of Fiduciary Duty Against Bernstein and Heyer (Count VII)

Plaintiffs' breach of fiduciary claims are against Heyer and Bernstein in their capacities as directors of XpresSpa, a Delaware limited liability company.   (Am. Compl. ¶¶ 72, 97.) Accordingly, Delaware state law governs.[27]   And under Delaware law, an LLC has the freedom to establish the obligations of its members and directors by contract.   Indeed, the Delaware Limited Liability Act establishes that it is the "policy of this chapter to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements." Del. Code tit. 6, § 18-1101(b).  In that vein:

> at law or in equity, a member or manager or other person has duties (including fiduciary duties) to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement, ***the member's or manager's or other person's duties may be expanded or restricted or eliminated by provisions in the limited liability company agreement***. . .

---

[27] New York courts must apply New York's choice of law analysis for breach of fiduciary duty claims. *In re BP plc Derivative Litig.*, 507 F. Supp. 2d 302, 307 (S.D.N.Y. 2007).  New York applies the internal affairs doctrine to claims of breach of fiduciary duty, which holds that the law of the state of incorporation governs. *Id.* at 308 n.18 ("Internal affairs rule has been applied repeatedly in claims of breach of fiduciary duty."); *Hau Yin To v. HSBC Holdings PLC*, 2017 U.S. Dist. LEXIS 28931 (S.D.N.Y. Mar. 1, 2017) (applying internal affairs doctrine to breach of fiduciary duty claims).

Del. Code tit. 6, § 18-1101(c).  Here, the LLC Agreement unequivocally eliminated all duties, including fiduciary duties, that Heyer or Bernstein may have owed to Plaintiffs and/or other members of XpresSpa. (LLC Ag. at 5, § 10.4.)  The LLC Agreement states:

> Exculpation of Directors.  No Director (in their capacity as such) shall owe any fiduciary or other similar duty to any other Director, the Company, or any Member, and no Director (and no Person entitled to designate such Director) shall be liable to any other Director, the Company or any Member for any loss suffered by the Company or any damages or other remedies for breach of fiduciary duties as a Director to the greatest extent allowed by the Act, as the same exists or may hereafter be amended. . .." (LLC Ag. § 10.01(d).);

> Fiduciary Duty.  Notwithstanding any other provision of this Agreement, to the fullest extent permitted by § 1101(c) of the Act, no Covered Person shall owe any duties at law or in equity (including fiduciary duties) to any other Covered Person other than any duties and obligations expressly set forth in this Agreement.  The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such Covered Person." (LLC Ag. § 10.04.)

Accordingly, Plaintiffs' cause of action for breach of fiduciary duty against Bernstein and Heyer (Am. Compl. ¶¶ 15661) must be dismissed.

And though it is unclear what actions Plaintiffs actually allege Heyer took to depress XpresSpa's value, Plaintiffs' chief allegation against Bernstein is that he caused Rockmore to declare a default on the Rockmore Note, rather than "waive or otherwise modify the alleged default in XpresSpa's reporting obligations. . . which would have allowed XpresSpa easier access to other sources of debt or capital more easily." (Am. Compl. ¶ 74.)  But this action was protected under the LLC Agreement.  Indeed, Bernstein is *expressly allowed* to take the exact actions (calling a default on the Rockmore Note) that Plaintiffs allege breached his fiduciary duty. (*See* LLC Ag. § 10.04.)  Given this clear language, Plaintiffs' claims against Bernstein must also be dismissed.

### F.  Plaintiffs Have Failed to Plead a Claim for Fraudulent Omission Against Bernstein and Heyer (Count IV)

Plaintiffs raise this new cause of action for the first time in their Amended Complaint, and like every other cause of action, it is deficient.  In order to allege a fraudulent omission, Plaintiffs must allege "(1) a material omission; (2) intent to defraud; (3) reasonable reliance on the part of plaintiffs; and (4) damage resulting from the reliance."  *Ortho-Clinical Diagnostics Berm. Co. v. FCM, LLC*, 2017 U.S. Dist. LEXIS 105418, at *10-11 (S.D.N.Y. July 6, 2017).  Moreover, "claims for fraudulent omission require a duty to disclose."  *Meda AB v. 3M Co.*, 969 F. Supp. 2d 360, 385 (S.D.N.Y. 2013).  And this disclosure duty only arises where there is "a fiduciary relationship between the parties or at least that the defendant knew that the plaintiff was acting under a mistaken belief with respect to a material fact."  *Frigitemp Corp. v. Fin. Dynamics Fund, Inc.*, 524 F.2d 275, 283 (2d Cir. 1975).  Plaintiffs fail to allege such a duty.

Indeed, the only obligation that Plaintiffs allege that Bernstein and Heyer had to disclose the alleged omitted information arose from an alleged "duty of candor as members of the Board of Directors of XpresSpa."  (Am. Compl. ¶ 131.)  But as demonstrated above, the LLC Agreement, in accordance with Delaware law, removed all fiduciary obligations owed between directors to each other and to XpresSpa.  *See supra* at 24-25.  Accordingly, Plaintiffs have failed to allege an essential element of a fraudulent omission claim and it should be dismissed.[28]

### G.  Plaintiffs Have Failed to Plead a Claim for Expropriation (Count VI)

Under certain circumstances not present here, a minority shareholder may be permitted to bring a direct claim against majority shareholders for what is referred to as expropriation, or an improper transfer of economic value.  These circumstances involve a majority stockholder who

---

[28] Plaintiffs also fail to sufficiently allege the other elements of a fraudulent omission claim as to the allegations alleged in paragraphs 132-135.  Indeed, Plaintiffs fail to plead materiality; scienter; and reasonable reliance.  *See supra* at 9-19.

used its position and power to have the corporation issue excessive shares to the controlling stockholder in exchange for something of lesser value.   As a result, the controlling stockholder's ownership percentage increases, while the minority shareholder's ownership is diminished.   *See In re Tri-Star Pictures*, 634 A.2d 319 (Del. 1993).

The seminal case discussing alleged expropriation is *In re Tri-Star Pictures*.   In that case, the minority stockholders of Tri-Star Pictures challenged an assets-for-stock transaction between Tri-Star and Coca Cola, Tri-Star's largest stockholder, that resulted in Coca Cola's majority shares in Tri-Star increasing from 56.6% to 80% and likewise decreased the minority shareholders' interest from 43.4% to 20%.   *Id*. at 322-23   The Court held that because the minority stockholders suffered an injury unique to them, they had a direct claim against the controlling stockholder— Coca Cola.   *Id*. at 330-33   These facts are completely distinct from those alleged in the Amended Complaint and this cause of action fails for multiple reasons.   *See ACP Master, Ltd. v. Sprint Corp.*, 2017 Del. Ch. LEXIS 125, at *70 n.206 (Del. Ch. July 21, 2017) ("direct standing to assert a dilution claim arises only where the corporation 'causes the corporation to issue excessive shares of its stock.'"); *El Paso Pipeline GP Co., v. Brinckerhoff*, 152 A.3d 1248, 1264-65 (Del. 2016) (holding claim was derivative where party conceded that expropriated economic value was not coupled with voting rights dilution).

Indeed a claim for expropriation is only available against the majority or controlling shareholder of a company.   Here, Plaintiffs attempt to bring this cause of action against all Defendants, but none of the Defendants was a majority or controlling shareholder of XpresSpa.

And, the former majority shareholder, Mistral, is not a defendant here.[29]   Accordingly, Plaintiffs

have not alleged a claim for expropriation.

   *H.  Plaintiffs Have Failed to Plead a Claim for Unjust Enrichment (Count VIII)*

   Under Delaware law,[30] to plead unjust enrichment, Plaintiffs must allege "(1) an

enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment,

(4) the absence of justification, and (5) the absence of a remedy at law." *Total Care Physicians,*

*P.A. v. O'Hara*, 2002 Del. Super. LEXIS 493, at *36 (Del. Super. Ct. Oct. 29, 2002).  They fail to

plead any of the above elements, and their claim must fail.

   In fact, the only allegation of unjust enrichment is in paragraph 163 of the Amended

Complaint:

> The Defendants have caused and will cause the Company to unjustly enrich
> Perlman, Bernstein, and Abbe[31] at the expense of, and to the detriment of Plaintiffs.
> The Defendants were unjustly enriched pursuant to receiving compensation and/or
> director remuneration ***while breaching their fiduciary duties to Plaintiff.***

Because an enrichment is a required element, the claim must be dismissed as to Form, Abbe,

Giardina, Stout, and Engelman, none of whom are alleged to have been enriched.  With respect to

Perlman, Bernstein and Heyer, Plaintiffs fail to articulate a single factual allegation as to how their

director and executive compensation is "at the expense" of Plaintiffs.  Indeed, under Delaware law,

there must be "some direct relationship . . . between a defendant's enrichment and plaintiff's

---

[29] Moreover, expropriation is another avenue to bring a breach of fiduciary duty claim, and accordingly, this claim is barred under the terms of the LLC Agreement. (*See supra* at 20-21.)

[30] New York courts have applied differing choice of law analyses for unjust enrichment claims depending on whether the unjust enrichment claim is closer to a contract action or a tort action.  Here, Plaintiffs' unjust enrichment claim sounds more in contract than in tort because the alleged benefit incurred upon Defendants arises out of the Merger and Merger Agreement, which has a Delaware choice of law provision.

[31] It is entirely unclear from the Amended Complaint how Abbe has been allegedly enriched.

impoverishment." *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 59-60 (Del. Ch. 2012). Plaintiffs allege no such connection, and thus, the claim fails.[32]

> I. *Plaintiffs Have Failed to Plead a Breach of Fiduciary Duty of Candor Against All Defendants (Count IX)*

"Corporate fiduciaries have an obligation to disclose all material facts when seeking shareholder action. Material facts are those for which there is a substantial likelihood that a reasonable person would consider them important in deciding how to vote." *In re 3COM Corp. Shareholders Litig.*, 1999 Del. Ch. LEXIS 215, at *19 (Del. Ch. Oct. 25, 1999). This claim fails for two reasons. First, Plaintiffs do not allege that they were shareholders of Form at the time that Form issued the S-4. The corporate fiduciaries of Form did not owe a duty of candor to Plaintiffs for the simple reason that Plaintiffs were not shareholders of Form. Second, Plaintiffs do not identify which "disclosures" were false or did not satisfy the duty of candor. To the extent that they are the same statements that make up Plaintiffs alleged securities claims, they fail for the same reasons as articulated above.[33] *See supra* at 8-17. Without an allegation as to how the S-4 did not satisfy the duty of candor, the cause of action cannot survive a motion to dismiss.

> J. *The Claims Against Stout and Engelman Are Especially Frivolous*

Although Plaintiffs' causes of action against all of the Defendants are meritless, they are especially frivolous as to Stout and Engelman. Indeed, ***Plaintiffs do not make a single factual allegation about Stout and Engelman that supports any cause of action that Plaintiffs have asserted against them***. *See Abdale v. North Shore-Long Island Jewish Health Sys., Inc.*, 19

---

[32] It also bears noting that Plaintiffs have not actually alleged an impoverishment as a result of the Merger, or that Perlman's, Heyer's and Bernstein's compensation is not justified.

[33] These statements were: Bruce T. Bernstein and Richard Abbe "will be deemed 'independent' in accordance with the standards set by The NASDAQ Capital Market. . ." and "[w]e believe the terms of the [Rockmore Note] were reflective of market rates as of the time of issuance."

N.Y.S.3d 850, 861-62 (N.Y. Sup. Ct. 2015) (dismissing breach of fiduciary duty and fraud claim where plaintiff failed to "include specific and separate allegations for each defendant"). Plaintiffs' chief allegation is that Engelman and Stout had a duty to investigate the alleged inappropriate actions of the "undisclosed" Controlling Group. (*See* Am. Compl. ¶ 6.) It is, however, impossible for Stout or Engelman to have knowledge of these allegations because, as Plaintiffs emphasize in the Amended Complaint, the alleged "arrangement" by the "Controlling Group" was "**undisclosed**." (*See* Am. Compl. ¶¶ 8, 28, 32, 33, 60, 68, 73, 82, 90, 97.) Since Stout and Engelman did not, and could not, have any such knowledge, they had no duty to investigate. *See Pfeffer v. Redstone*, 965 A.2d 676, 687 (Del. 2009) ("When pleading a breach of fiduciary duty . . . [Plaintiff] must, at a minimum, offer well-pleaded facts from which it can be reasonably inferred that this 'something' was knowable and that the defendant was in a position to know it."). Stout and Engelman's inclusion in this action is frivolous and all claims against them must be dismissed.

## CONCLUSION

Defendants submit that the claims against them must be dismissed with prejudice.

Respectfully Submitted,

Francis J. Earley
John P. Sefick
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
  AND POPEO, P.C.
The Chrysler Center
666 Third Avenue
Tel: (212) 935-3000
fjearley@mintz.com
jpsefick@mintz.com

Adam L. Sisitsky, *pro hac vice*
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
  AND POPEO, P.C.

30

One Financial Center
Boston, Massachusetts 02111
Tel: (617) 542-6000
alsisitsky@mintz.com

*Attorneys for Form Holdings Corp.; Bruce T.*
*Bernstein; Richard K. Abbe; Andrew D. Perlman;*
*Salvatore Giardina; Andrew R. Heyer; Donald E.*
*Stout and John Engelman*