ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/19/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORETON BINN and MARISOL F, LLC,

                Plaintiffs,

- against -

BRUCE T. BERNSTEIN, RICHARD K. ABBE
ANDREW D. PERLMAN, SALVATORE
GIARDINA, ANDREW R. HEYER, DONALD E.
STOUT, JOHN ENGELEMAN, and FORM
HOLDINGS CORP.,

                Defendants.

17 Civ. 08594 (LLS)

MEMORANDUM & ORDER
DENYING SANCTIONS

      Defendant Richard K. Abbe moves under Fed. R. Civ. P. 11(b) and the Private Securities Litigation Reform Act ("PSLRA") for the imposition of sanctions against plaintiffs and their counsel.

      I denied defendant's previous request for a pre-motion conference on the issue of sanctions in my August 29, 2019 Order. (Dkt. No. 183). The Court of Appeals held that my Order "does not make specific findings as to each claim, nor does it address each attorney or plaintiff's conduct in bringing the present action. As the [PSLRA] require[s] the district court to make findings, we have no choice but to remand in order to permit it to do so." (Dkt. No. 195) (internal citations and quotation marks omitted).

      My specific findings denying defendant's motion are detailed below.

-1-

## I. BACKGROUND

I find as facts, and incorporate by reference as if fully repeated herein, the Background section of this Court's May 21, 2019 Opinion & Order (Dkt. No. 151).

Defendant Abbe argues for sanctions on the grounds succinctly stated in his January 4, 2020 Court of Appeals brief at pp. 25-29: that plaintiffs' claims against defendant Abbe were frivolous because there were no allegations of Mr. Abbe's misconduct or allegations of misstatements/omissions of material fact regarding Mr. Abbe's ownership interest of the Rockmore Note or overlapping board membership, and even if there had been allegations of materiality, Mr. Abbe's interest was a matter of public record, which voids any claim against him for failure to disclose that information. Defendant also argues that sanctions are further warranted on the basis that "subsequent lawsuits by plaintiffs or their counsel . . . have demonstrated that they assert claims without any proper purpose", but instead as part of plaintiffs' "emotional campaign" against defendants. Def. Br. at 12-13.

## II. FACTUAL AND LEGAL BASES

### 1) Count I

Based on the facts alleged, plaintiffs could colorably argue that (1) Mr. Abbe had a duty to disclose his interest in the Rockmore Note based on his signature on the Form S-4, (2) plaintiffs reasonably believed this interest was undisclosed

-2-

since the names "Rockmore", "Form Holdings Corp." or "XpresSpa Group, Inc." do not appear in any of the relevant securities filings, and (3) the omitted information was a material fact since plaintiffs were minority investors whose equity interest would now be subordinate to that of Mr. Abbe's. While Mr. Bernstein also had an interest in the Rockmore Note and the merger still proceeded, plaintiffs allegedly imposed important voting limitations on Mr. Bernstein based on his disclosed interest, which further supports an argument of materiality.

Plaintiffs could also reasonably believe that the Board's independence was impaired, not only based on the overlapping memberships, but also as a result of the alleged coordinated investing activities and longstanding economic relationships between its members, and that the omission of this information could give rise to a colorable Section 10(b) claim. See Opp'n Br. at 20. Although Delaware Law appears to have been clear at the time that overlapping board membership alone does not call into question the ability of the board to exercise independence, see Halpert Enterprises, Inc. v. Harrison, 362 F. Supp. 2d 426, 433 (S.D.N.Y. 2005), plaintiffs could reasonably believe that the additional undisclosed facts concerning Mr. Abbe's interest in the Rockmore Note and the defendants' alleged history of using debt facilities to exert control over public companies would be sufficient to show a greater scheme to enrich defendants at plaintiffs' expense. Plaintiffs could also

reasonably believe that the defendants used their position of control to directly, or indirectly (through the alleged provision of false information to the advisement firm), inflate the value of XSPA securities, and that the actual inflation of such securities became apparent following the merger, when the value of the surviving company was significantly less than the estimated combined value.

Based on those facts, Plaintiffs could colorably argue that Mr. Abbe's and the Controlling Group's conduct violated Rule 10b-5's prohibition against engaging in "any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

**2) Counts II & III**

The same conduct alleged in support of Count I supports a reasonable belief that defendants formed a "Controlling Group", see In re Crimson Expl. Inc. Stockholder Litig., 2014 WL 5449419, at *15 (Del. Ch. Oct. 24, 2014) (members of a control group must be "connected in some legally significant way" such as "by contract, common ownership, agreement, or other arrangement—to work together toward a shared goal), and that the group could be liable under Section 20(a) of the Exchange Act for material misstatements or omissions. A conceivable, although likely unsuccessful, extension of existing law may have led plaintiffs to believe that they could also bring a Section 12(a)

claim based on the alleged misstatements or omissions in the securities filings, where the shares of New XpresSpa were issued and purchased pursuant to the S-4, which was explicitly referred to as a "prospectus".

### III. IMPROPER PURPOSE

The Court cannot find that plaintiffs or their counsel acted with an improper purpose in bringing suit against Mr. Abbe. The fact that plaintiffs or their counsel brought two related, although not wholly duplicative, lawsuits against Mr. Abbe and many of the same defendants, both of which were ultimately dismissed, does not establish an objective intent to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. Rule 11(b)(3).[1] See e.g., Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 393 (2d Cir. 2003)("Without objectively unreasonable statements, . . . a greater litigiousness do[es] not alone amount to improper purpose.")

### IV. CONCLUSION

"The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable. The operative question is

---

[1] Defendant cites Ramashwar v. Espinoza, No. 05 CIV. 2021 (AJP), 2006 WL 36752, at *6 (S.D.N.Y. Jan. 6, 2006) in support of its proposition that "recycling" versions of a complaint warrants an imposition of sanctions. Not only is it unlikely that that this conduct on its own would warrant sanctions, but the allegedly recycled complaints in the cases at bar involve overlapping facts regarding the underlying transactions and events, unlike those in Ramashwar, and the Court will not impose sanctions for repetitious factual allegations where they are relevant to the plaintiffs' claims.

whether the argument is frivolous, i.e., the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." Fishoff v. Coty Inc., 634 F.3d 647, 654 (2d Cir. 2011)(internal citations and quotation marks omitted). This Court previously found that plaintiffs' allegations under Section 10(b) and 20(a) of the Exchange Act (Counts I and II, respectively) were sufficient to state a claim. See August 6, 2018 Memorandum and Order (Dkt. No. 81). At that point, plaintiffs had reason to believe that their arguments had at least some chance of success, and there is no evidence that discovery later revealed that the allegations had no chance of success. Imposition of sanctions is thus unwarranted in this case. See Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986)("[R]ule 11 is violated only when it is patently clear that a claim has absolutely no chance of success.") (internal citations and quotation marks omitted). So ordered.

Dated:    New York, New York
          February 19, 2021

                              *Louis L. Stanton*
                              LOUIS L. STANTON
                              U.S.D.J.